The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oye, oye, oye. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right. Be seated, please. All right. The first case we'll hear this morning is Myers v. Mayorkas. And Mr. Waller, we'll hear from you first. Yes, Your Honor. Thank you, Your Honor. May it please the Court, Shane Waller for the appellants Reba and David Myers. Your Honors, the question presented to the Court is this. When the government seizes an innocent substitute asset for the purpose of forfeiture, does it also seize that property for the purpose of forfeiture under the Federal Tort Claims Act? Just to get us off on both feet, that property was also seized under the criminal search warrant and was reported as being seized under it. Your Honor, the government maintains that it was seized under the criminal search warrant. But it was on the return. It is on the return, Your Honor. Well, I just make that point. You can argue it, but the evidence that it was seized under the forfeiture is the same as the evidence that it was seized under the criminal warrant. And the cigarettes were reported on both returns. Your Honor, the property, that is correct. It was on the return for the criminal search warrant. The property, there was other property that was seized as a substitute asset, Your Honor. There was currency that was seized, money that was seized during the executions of the search warrant. That was also identified on the search warrant return, the Rule 41 evidentiary search warrant. And that property was also identified in a separate seizure warrant as an innocent substitute asset. Your Honor, a search warrant return is, there isn't any cause of action for an error in a search warrant return. It's a magisterial function. And so to rely on the search warrant return as the legal basis for the seizure, I think, causes difficulties, Your Honor. Well, the warrant says to seize all the packaging. And so you seize the packaging and leave behind the cigarettes. That's a pretty strange idea. So if you're going to seize the cigarette packaging, the cigarettes go with it. And they reported it seized under the criminal warrant. Now, that's just a fact in the record. They also reported it under the civil forfeiture warrant. Your Honor, that assumes that the cigarettes are the cigarettes in their packs, Your Honor. Who said that? I thought the warrant talked about cigarette packaging. The warrant does. It talks about boxes, cartons, and tax stamps. And the evidentiary search warrant also describes the reason for taking tax stamps because sometimes there are counterfeit tax stamps at certain locations. And so they wanted those as evidence. And they're on every package, right? The tax stamps are correct. They're on this packaging, Your Honor. So I want to make sure I understand what you're saying when we're talking about packaging. I mean, if you go into a convenience store and buy a box of cigarettes, are you talking about that as the packaging? Or are you talking about broader packaging in which a number of specific boxes are contained? Your Honor, I would suggest that the government's packaging when it intended to seize it was the cardboard boxes that the cartons were in, the cartons that contain individual packs of cigarettes. And the government's intent in obtaining a seizure warrant for the purpose of forfeiture was then to take the individual cigarette packs because that is what has the value, and that's what they could forfeit. Where are the tax stamps? On what package? The tax stamps are on the individual cigarette packages. Okay. That's what they wanted under the criminal warrant, the packaging and the stamps. So the only way they could leave behind the cigarettes is that they opened every package and left the cigarettes behind and brought the packaging with the stamps. Your Honor, I don't know that that's entirely clear because the evidentiary search warrant talks about contraband tax stamps. Wow. Yes, Your Honor. Your Honor, the difficulty here is that the government gained a tactical advantage in seizing, identifying this property as a substitute asset. Maybe it did, but let's just talk about the test first. Is it your position that the test that the district court used, the sole-purpose test, is the appropriate test and it's not satisfied? Or do you advance some different test? No, Your Honor. I would suggest that the foster analysis, the sole-purpose test, needs to be limited to the facts and foster, Your Honor. That case is entirely factually different. So what's the test? Okay, so you say that's the test for foster and is limited to its facts. I mean, we can agree or disagree with that, but assume you're right. What's the test here? If we keep foster to its facts, what do we apply here? Your Honor, the test should be, at the most basic level, the plain language of the statute. And the statute says, if property seized for the purpose of forfeiture, the government waives sovereign immunity. So your position is if at the time of the seizure it had more than one purpose, the sovereign immunity is waived? My position is that at the time of the seizure, Your Honor, it is the legal purpose, the legal basis for taking the property. Well, hypothetically, let's assume it said the cigarettes were on the search warrant, okay? And the cigarettes are on the forfeiture warrant. You've got undeniable dual purpose there, one of which is forfeiture, one of which is not. What happens there, under your theory? Your Honor, under my theory, in that scenario, the government would have an independent legal basis to seize the cigarettes and hold them, Your Honor. The difficulty in not applying it in that way is because the way that CAFR is written and the way the statute reads is that there are rights inherent that become triggered based on how the property is seized. Well, what do you do with the rewaiver provision that Congress enacted that creates an exception to your argument? The rewaiver provision of the detention of goods exception, Your Honor? Yes. So under the detention of goods exception, there's four provisions, Your Honor. The first provision being that the property had to be seized for the purpose of forfeiture under any provision of federal law. But there's a second part to that as well, Your Honor, which is that the federal law has to provide for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense. The second paragraph is that Congress is waiving sovereign immunity unless the interest of the claimant was not forfeited. And then the third is that the interest of the complainant was not remitted or mitigated. And the fourth was that the complainant was not convicted of a crime for which the interest of the claimant and the property was subject to forfeiture. The reason that those are important, Your Honor, is because Congress was not only were they waiving sovereign immunity, but they were retaining sovereign immunity in how they wrote that. And Congress was very specific in how that they wanted that immunity to be applied. How do we apply the language of the warrant, the forfeiture warrant, where it says it's for forfeiture to remedy violations of the criminal code? I'm sorry, Your Honor. It says purpose of the forfeiture warrant. It says to remedy violations of Title 18 United States Code Sections 2342 and 371, which is a conspiracy. Yes, Your Honor. So it seems to me that that was the purpose of that forfeiture was to remedy a criminal violation. Yes, they were attempting to address a criminal act. Not address, it was for the purpose. That's what it says, the purpose. Yes, Your Honor. But the underlying statutory basis for the forfeiture or for the seizure is what then triggers the other provisions of CAFRA, Your Honor. In other words, Your Honor, if this property, because this property was seized as a substitute asset under the it. The government did not need to perform a tracing analysis, which is typically which is required for civil forfeiture proceedings. The government could avoid that altogether. The government also didn't have to identify any. I agree with you. The government was trying to maximize the benefits of executing these warrants so that it didn't have to go one route or the other. But what I'm really doing is trying to follow up a little bit on Judge Quattlebaum's question. It looks to me like the government clearly wanted this to serve two purposes. One is the civil forfeiture and the other is to enforce the criminal laws. Your Honor, the difficulty in the government's analysis and the test. I'm looking at the evidence. Let's forget the analysis. Let's look at the evidence in the case. I'm looking at the forfeiture warrant and I'm looking at the criminal warrant. And the forfeiture warrant says it's for purposes of enforcing the criminal law. And both warrants report a return of the cigarettes. So the government was very deliberate in executing the warrant for both criminal purposes and civil purposes. Yes, Your Honor. But I would refer back to the detention of goods exception. The language specifically, it weighs liability if it was seized for the purpose of forfeiture. But then it specifically retains sovereign immunity if three conditions are met. And so those conditions are that if it was seized for the purpose of forfeiture under any provision of federal law providing for the forfeiture property other than as a sentence imposed upon conviction of a criminal offense. Well, that's the key I'm focusing on. It says other than for a remedy of conviction. But the civil forfeiture warrant, which you call the forfeiture warrant, says it's two remedy violations of the criminal violation. That's right in the text of it. Yes, Your Honor. I agree that that is what the text says. And doesn't that fall squarely in the waiver provision? I would disagree, Your Honor. Because the purpose of the seizure, the government expressly stated in its seizure warrant that it intended to take this property to forfeit it, to take the money for it. And so it may have been trying to address a criminal violation, but all asset forfeiture for the most part is attempting to address some sort of wrongdoing, Your Honor. And so the plain language of the statute says if the purpose of the statute was forfeiture, then we're waiving liability unless it's as part of a sentence in a criminal case or the person was convicted of a crime for which forfeiture was authorized or the property was actually forfeited. Well, I'm curious about where the Dollar's Treasure store in Winchester, was that where all the cigarettes were seized or were they in other locations? Yes, Your Honor. All the cigarettes in this case were seized there. Well, what happens to the situation when the case is dismissed as it was in this case? And that's the difficulty, Your Honor, is once the case is dismissed, then what happens to the property? The property is now worthless because of the length of time it took to get to a resolution in the case. And that's the exact issue that Congress was trying to remedy when it passed CAFRA, Your Honor, was here's this property that's being taken, it sits in a warehouse somewhere, and it rots. Sure. And it may be that the question is whether the situation Congress was trying to remedy is a situation where it's solely for substitute forfeiture purposes or whether it's for those purposes and others. And I understand your argument that it wasn't for a dual purpose here. I mean, that's one argument. It sounds like you're really not going there. You're saying if there are dual purposes at the time of seizure, the rewaiver doesn't apply. Your Honor, the court could reach that conclusion and we would still be successful here because although the government generally said it was trying to remedy a criminal offense, the exact provision of the statute that it was relying on to obtain to seize the property was for civil forfeiture. The government affirmatively identified this property as a substitute asset, an innocent property by its definition unrelated to a criminal offense. So the government should be bound to that statement that it's making under oath and not be allowed to come back and through the benefit of hindsight to try to fit it. They're not saying this. I mean, that may be true because the statute says, I think, at the time of seizure. So coming back after the fact and inventing another purpose, I might have some sympathy to the argument. As I understand their argument, it's not that. It's that it was either an oversight. To be fair, their argument shifted some. But it was either an oversight or it was incidental to the packaging and you really couldn't do anything else about it. So that's not coming in after the fact and changing it. That's saying at the time of the seizure, it was included. But for an oversight, it was included as incidental property. Your Honor, that whether or not it was incidental is a factual determination. And the government has offered nothing other than just the statements of government counsel. I'm just trying to figure out. That may be right. That's an issue for discussion. But I thought you were saying that even if those were true, you win because forfeiture was one of the purposes. And so I'm just trying to understand your argument. I mean, if your argument is it's not really, you know, they came in after the fact or it's really only one here, that's one thing. But it seems like you're you're you're advocating a test that would really make that this this exemption, you know, really nullify the the the, you know, the exception in large respects, because there's always some or frequently some forfeiture element. Your Honor, I see my time has expired. Yeah, please answer the question. I'm sorry, Your Honor. You may answer the question, of course. Your Honor, the appropriate test I would submit is the purpose of the forfeiture is the legal basis under which the property was seized. And in this case, it there it was no dual purpose because the forfeiture, the property sees specific pursuant to the civil forfeiture statute for the purpose of substitute. Let me ask you just to follow up to get clear what your position is. Do you challenge the Foster case as an appropriate interpretation of statute? Your Honor, Foster was wrongly decided, Your Honor. Foster reads things into this. You have a case going the other way. Your Honor, there are no there are no cases going the other way. And that's because there are in there are no cases that have addressed the situation where the government seized property absent some. I'm talking about the the purpose where using the word solely. Foster said it had to be solely for the purpose. And the question is, and a couple of other circuits have adopted that. And so the question is. Do you challenge that proposition or is your challenge here that, in fact, it was not a dual purpose? Your Honor, first, it was not a dual purpose. And secondly, in this case, in order to get to the Foster's holding, you have to add the word solely into the statute, which doesn't exist. Your Honor. Well, it says for the purpose. And the question is, if it's if it has multiple purposes, the question then is, can you rely on the one purpose that falls within the sovereign immunity? And that's what Foster did, because we read sovereign immunity restrictively. That's and you challenge that to your honor. The same Foster was wrongly decided. Yes, Your Honor. Foster was wrongly decided because it adds solely to the words of the statute. OK, thank you. Yeah, we will have you back on on rebuttal. All right. Miss Taylor. Yes. Good morning, Your Honors. Laura Taylor on behalf of the United States. I appreciate your time today. It is plaintiff's burden to prove subject matter jurisdiction. And he has not met that burden here. Well, that's the issue. Well, it's his burden to prove it, and he must allege it in his complaint. And here we would ask the court to affirm the district court's dismissal of the Myers complaint because the cigarettes were, in fact, seized for the dual purpose of evidence in a criminal investigation as well as forfeiture. And therefore, the United States has retained its sovereign immunity under the FTCA. So assume, counsel, we agree with you that the dual purpose or sole purpose test on which what you call it, that the foster test applies. Is it the government's position that there was some oversight in the drafting of the Rule 41 warrant? Or is it the government's position that the actual cigarettes are incidental, inherent in what was included in the warrant? What's y'all's exact position? The short answer, Your Honor, is both. In a waterfall argument, I think the government would concede that it intended to include cigarettes as a specific item to be seized in attachment B to the Rule 41 warrant. Okay, let's stop on that. Let's deal with that one first, that you intended to do it. Where's the evidence you intended to do it? So there was not evidence of that fact in the form of an affidavit provided to the district court that's in the record in this case. Okay. That has not yet been established.  All right. I'm sorry, go ahead. I'm sorry, Your Honor. No, you can finish. I want you to have a chance to answer. There's not direct testimonial evidence from the agent that that was his intent. But there is certainly circumstantial evidence, as provided in the record, reflected in the fact that the cigarettes were seized and documented in the return to the Rule 41 warrant. Now, all four pallets of cigarettes are detailed explicitly in the Rule 41 return. But do you have a problem there? Because, I mean, I hear you. I mean, I think there's evidence in the return that that would be consistent that they were intended. You know, I think you could read the Lamboni affidavit both ways. I mean, the fact that it was changed could have meant that it was intended all along, or it could have meant something changed after the fact. But I have a little bit of a concern that, you know, look, people don't always get it exactly right. I mean, oversights happen. But, you know, if that's the position, that's the evidentiary position. It's not contained in the complaint. And so I'm having a little concern how you get there in a Rule 12 context. Yes, Your Honor. The way you get there is because it's not dispositive of the issue. Judge Dillon correctly held that law enforcement would have had authority under Rule 41 to seize the cigarettes, incidental to seizing the packaging anyway. So the oversight becomes irrelevant. So then you go to the incidental argument. Is that right? Does that require – is that something that's just self-apparent? Does that require evidence? No, Your Honor, it does not. And that is the most streamlined way to resolve this case. Why did y'all first say it was an oversight? Your Honor, I believe both to be true. That it was an oversight that cigarettes were not explicitly enumerated in Attachment B, but that they were then lawfully and properly seized as incidental to the cigarette packaging. So if we were here, for example, on a motion to suppress in the criminal context, the question would be, does Attachment B allow law enforcement to have seized the cigarettes incidental to the packaging? And Judge Dillon's answering that question in the affirmative. She's finding, yes, it's incidental. So regardless of whether the cigarettes should have separately been enumerated in Attachment B becomes irrelevant at this point. And, of course, whether or not the evidence would have been subject to suppression is not the relevant question. The question is, what was the law enforcement officer's intent at the time of initial seizure? And that intent is proven both by the Rule 41 return as well as the fact that there is a common sense understanding that if you're seizing the packaging, you would be seizing the cigarettes. You would not take the cigarettes out of its packaging because to do so would destroy the value of the cigarettes. It just seems odd that you're – I think the government – did the government submit the Limboni Affidavit? Yes, Your Honor. If you're sitting here, if you're arguing that the intent of the officer is what's important and you didn't put that intent into evidence, I mean, I think if you had put that intent into evidence, yeah, it would be hard to disagree with that. And I'm not fussing the lawyers. Being a lawyer is hard. So that's not being critical. It's just we're here in a 12B context, and you're saying the key thing is intent, and yet you put in an affidavit, but not the one that would show that intent. Yes, Your Honor. I did not – I was not the line AUSA who handled this below, and I asked the same question when I began my preparation for this appeal because that seems like it would have put an end to all of this question here that we are talking about today. What happens to the fact, or does it make any difference, that all the cigarette scenes were from Winchester, and that case ended up getting dismissed because she's found not guilty? Yes. So why do you sit on the cigarettes for, what, four years, five years? Judge Floyd, if I understand your question correctly, you're asking about what impact the acquittal had on the continued detention of the cigarettes. Yes. And here the timeline is important, and I'd like to answer that question and then follow up a little bit on Judge Quattlebaum's question as well. So the search warrants here were executed in 2015. That was the time of seizure. The indictment and criminal trial didn't take place for several years later. After Ms. Myers was acquitted in her criminal case, the government then offered to return the cigarettes, and she declined. So it was not four or five years after the acquittal that the government held on to the cigarettes. It's that the indictment and criminal trial took place several years after the seizure. So the evidence… The life of the cigarettes is less than a year or a year, roughly? The complaint alleges that the shelf life of the cigarettes is approximately 12 months. And if I could just refer… So the cigarettes went stale before there was even an indictment? Yes, Your Honor. But don't you have a duty to take care of the property that you seize? When the government seizes evidence for purposes of a criminal prosecution, there is sometimes the risk that that value of that evidence will diminish during the government's possession. That's why Rule 41G exists in the Federal Rules of Criminal Procedure to allow a criminal defendant to seek the return of his or her property if there is a risk of the loss of value or damage pending the criminal case. Here, Ms. Myers never filed a Rule 41G motion, despite being made aware that the cigarettes had been seized pursuant to the Rule 41 search warrant by receiving a copy of the inventory return. So she could have sought that redress through a Rule 41G motion, and she chose not to. So, yes, there's a chance at times that evidence could lose its value pending a criminal prosecution, and the defendant has an opportunity to address that by filing a Rule 41G motion. Well, that gets to the whole damages in this case, though. It looks to me like Congress intended that that kind of damage was not waived, and that there's sovereign immunity as to that kind of damage. That's correct, Your Honor. That's exactly right. The longstanding position of Congress through the FTCA is that the government retains sovereign immunity regarding the detention of goods for purposes of a criminal prosecution, which is exactly what we have here. And to revisit Judge Quattlebaum's question briefly, if I may, Your Honor, at this juncture, it is the plaintiff's burden to allege in the complaint facts that can plausibly allege that the sole basis of the seizure was forfeiture. Here in the complaint, the plaintiff explicitly concedes that the seizure was done as part of a law enforcement action that resulted in a criminal prosecution,  but I think what they alleged, I mean, you're right. It was in the criminal context. I mean, if your argument is every time it's in a seizure for forfeiture purposes that has some connection with a criminal case, that's a pretty broad reading of the thing. I think what the plaintiffs say is, look, we've got two warrants. One of them has cigarettes in it. It says forfeiture. One of it doesn't. It says Rule 41 seizure. You know, why doesn't that meet their basic burden? And then the government needs to say, oh, no, no, no, that may be what it says, but it was either oversight or incidental, and I think you could do it. I mean, apparently there's someone around who had that intent. I think, you know, if it has dual purposes at the time of seizure, the text supports the foster analysis, or at least that's what. But, yeah, anyway, I may be beating a dead horse with you. I'm just I'm concerned that you're talking about intent that, you know, at least could be inconsistent with the documents. It could be consistent with the documents. So, yeah, that's my problem. I understand, Your Honor. I would point Your Honor to the smoke shop case out of the Seventh Circuit as well as the District of Maryland's decision in Star Indemnity because in both of those cases there was a finding that the plaintiff's allegations themselves fell short because the plaintiff's complaint admitted that the items were seized as part of a criminal investigation in addition to the purpose of forfeiture. But what if it's, I mean, you know, what if that, I mean, here there's a, you know, arguably kind of close connection. I mean, it's about cigarettes. These are the cigarettes. But, I mean, you know, what if it's more removed than that? I mean, you took some other assets from the, you know, the store that didn't have anything to do with the cigarettes and then the same sort of, you just say, yeah, it was all part of a criminal thing. I grabbed all the liquor too. Sure. There are certainly hypothetical examples where the dual purpose may be less clear and may require more evidentiary proof or more discovery. But that's just not this case. This case didn't rise to the level of needing an evidentiary hearing because on the Why does it, let's talk about this case. Your theory under the warrants are that what was going on is that they were selling these goods to people who either came in from New York or were headed to New York to sell the cigarettes. I thought this for a while was like you didn't pay the taxes on it. But it sounds like it's not that. It's that, you know, the taxes are higher in New York so you can, people were getting these cigarettes in Virginia. This was the theory and taking it up to New York where they could make a bigger profit. So, I mean, what evidentiary value do the cigarettes even have? You are correct that the government's theory was kind of a quintessential cigarette trafficking theory where you purchase cigarettes in a state with lower taxes, with valid tax stamps in that state, and then you sell them on the secondary market in a state with higher taxes because you can make money on the secondary market selling it that way and even though it's obviously illegal because you're selling cigarettes from the other state with their tax stamps on them. It's only, it's not illegal necessarily, I would think it's not illegal to sell them unless you know, unless you are aware it's part of some trafficking conspiracy. And I know that's the theory. In addition, Ms. Myers was also charged with record keeping violations that when you are a retailer of more than a certain number of packages of cigarettes, you must maintain certain records that the government can then inspect or be produced to show that you are a lawful and proper retailer of cigarettes. So, it's my understanding she was charged both with the, if I have this correct, the conspiracy to traffic illegally in cigarettes as well as the record keeping violations. And of course, she also pled to the tax evasion charge. There was a multitude of... But from the actual trafficking count, you know, the cigarettes and quite frankly, the packaging seems fairly irrelevant. I mean, the packaging looks just like any other packaging that's going to be sold in Virginia. I mean, the evidence it seems to me is the evidence of the purchasers. The best evidence would be you have evidence of the purchasers selling the cigarettes in New York and you match it to the cigarettes that are being sold in Virginia so that you can prove that Ms. Myers is the co-conspirator in Virginia who's allowing the trafficking to happen in New York. What was the theory in this case? Did they leave the Virginia tax stamps on the packages and put on fake New York ones? Or what did they do? Your Honor, please excuse me. This case was prosecuted out of the Northern District of West Virginia. Because the forfeiture was in our district, we handled the forfeiture side, not the criminal prosecution side. So I am not 100% certain of the answer to your question, but I believe the answer is yes, that they would leave the stamps on. But I can confirm that and provide that in a supplemental. No, that's all right. I would think the stamps would be relevant. Yes. And the affidavit shows the statutory definition of cigarette includes packaging and packaging includes cigarettes. And it's in the disjunctive. Yes, Your Honor, that's exactly right. And I'd also be happy to provide supplemental briefing on the record-keeping charge. But to the extent that one must prove that the retailer had a certain number of qualifying cigarettes in the shop in order to then trigger the record-keeping violations, the cigarettes and the volume of those cigarettes would be essential proof at trial on that element. But, again, because my office did not prosecute the criminal case, I lack 100% certainty on this, and I would prefer to provide it to you in a supplemental brief if it's critical. No, I don't need that for this purpose. Thank you. In the smoke shop case out of the Seventh Circuit, the court emphasized that if the allegations give rise to a plausible alternative explanation like a criminal investigation, then the government retains its sovereign immunity. Well, I assume that you're saying the government is one thing. The criminal prosecution occurred in West Virginia, and your forfeiture here is in Virginia. How is there dual purposes? Your sole purpose was forfeiture. In the broad sense, Your Honor, the government acts as one. Here it was a joint task force that applied for simultaneously Rule 41 warrants as well as forfeiture warrants. By operation of law, the Rule 41 warrant must be issued in the district where the property is located, whereas the forfeiture warrant may be issued in the district where the forfeiture will be pursued. In this case, the Northern District of West Virginia was the primary prosecuting jurisdiction. For venue purposes, she lived in West Virginia, right? And much of the criminal activity took place there, but the store itself was located in Virginia. And so this was a case where the criminal activity crossed state lines, and when the law enforcement officers sought to execute the search warrant at Dollar Stretcher, that was in our district in Virginia, and so they coordinated with our office to apply for the Rule 41 warrant from one of our judges. But the case was a West Virginia case, not a Virginia case, in terms of the prosecution of the Myers. Anything else? If the court does not have any further questions, I'm happy to rest on my briefing, and I'm happy to revisit the question, Judge Quattlebaum, you asked regarding the charges in the indictment by supplemental briefing. If you would like, please just let me know. You mean about the record-keeping issue? Yes, Your Honor. No, I'm not. I'm not certain about that. I would be happy to provide it subsequently. Okay. Thank you. All right. Mr. Waller? Your Honor, there's a fraud scheme alleged in the search warrant and the seizure warrants, and what Ms. Myers was charged with was record-keeping violations. There was no allegation that they were using non-demand tax stamps. There was allegations that they were not recording transactions of over $10,000 and they were not recording cigarette sales of over a certain quantity, Your Honor, which does make the evidentiary value of these cigarettes quite questionable. And considering where we're at, I think the court has hit on this, considering where we're at in this process, it's difficult to look on the one hand of the clear statement of the government's purpose in a document it's submitting to the court under oath, that it's going to take this for the purpose of forfeiture. It then takes the property and logs it in as non-evidence, forfeitable property in its tracking system. And so at least for a period, at least for a 60-day period of time, the government is holding this property by its own admission as nothing other than forfeitable property. And there potentially is a period of time where some or all of those cigarettes may have perished since this is a perishable good. So again, there's at least a 60-day window. And then at some point when the government decides to change internal categorization, the document, the affidavit the government submits is just a hearsay document of respectfully a paralegal who's assigned to track the property that says just kind of vaguely that I was told to do this. It doesn't say why she was told to do this or that the government affirmatively identified it as evidence. And the property therein is that at this early junction, without any sort of declaration or affidavit from the agents in this case as to what their intent was, how does the court reach the factual determination that it was in fact for a secondary purpose? The only thing supporting it is the fact that it was included on the return, but it was also included on the return for the seizure warrant. What about the incidental issue? The incidental is self-apparent. Let's assume that they were after the packaging and not necessarily the contraband. I know they said both, so you could come back with me on that. But the incidental issue, do we really need evidence for that? The stamps are on the cartons. It seems to me the good faith intent is one thing, but the incidental issue is just a matter of common sense and fact. I'm wondering whether we need more evidence for that. And that's what the district court ultimately relies on, right? Yes, Your Honor, and I would submit that the court does need more information in the face of the government explicitly categorizing the property as non-evidence forfeitable property. What do you do about the fact that they never offered the cigarettes as evidence? I'm sorry, Your Honor. What do you do about the fact that the government never offered any evidence of the cigarette pack itself? And, Your Honor, I think the fact that they didn't use it as evidence, that they didn't offer the photographs as evidence, that they didn't include it on its witness list, or I'm sorry, on its exhibit list all demonstrates that the government didn't view it as evidence. And so for the government counsel now to say it was evidence, I think… Is a subjective intent standard applicable here? I thought it was an objective standard on what the searches were and so forth. I mean, if an officer had subjective intent to punish somebody, is that relevant by executing a warrant? In other words, we're under a standard that's an objective standard of seizures and searches? Yes, Your Honor, and I would respectfully say… Regardless of what they thought and what they did and how they used it, it doesn't matter. The question is, was it seized legally, both of them, and what was it seized for? And the question is, was it seized for dual purposes? You say it wasn't, but if that's a question that can be determined objectively from the record. And then the question is, if it's seized jointly, then as a legal question, does the foster opinion apply or is the foster opinion wrongly decided, as you argue? Yes. I think that's what's before us. Yes, and the difficulty with the test that the government is asking the court to adopt is this. The government is essentially saying that its accusation of criminal wrongdoing removes the government from liability under the Federal Tort Claims Act. Well, you have to read the Federal Tort Claims Act, and the one exception there says for criminal prosecution, isn't it, or something like that, to that effect, a detention for criminal prosecution? Your Honor, my time has expired. May I? Yes, of course. Your Honor, the exception is not for criminal prosecution. What's the language? I'm trying to… It's okay, Your Honor. I apologize. I didn't mean to… Yeah, no. I'd like to know what the language of the Tort Claims Act's exception, that number one. Yes, Your Honor. At the very end of the sentence. Congress, under the detention of goods exception, the Congress specifically retains sovereign immunity if the property was not forfeited as part of a criminal sentence or the individual was convicted under a statute that allowed for forfeiture or if the property was forfeited. So the statute clearly retains immunity for specific situations, Your Honor. Thank you, Your Honor. Thank you. All right. I think we're still under protocols of COVID. We're operating under those. I see you all have masks. It's good to see. And our normal practice would be come down and shake your hands. This is a unique court circuit, and we've always treasured that idea. This whole exchange is a civilized exchange. We don't have dueling in the courtrooms and so forth. So we confirm that with our handshakes and we'll retain that practice, but we're not doing it during the COVID protocols. But we do want to thank you for your arguments, and we virtually shake hands from the bench with you. Thank you very much, and we'll proceed on to the next case.
judges: Paul V. Niemeyer, A. Marvin Quattlebaum Jr., Henry F. Floyd